United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIA PEPP-ZOTTER,

    Plaintiff,

  v.

LIBERTY LIFE ASSURANCE CO. OF BOSTON,

    Defendant.
                                 /

No. C 06-04200 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this action alleging failure to pay insurance benefits, defendant Liberty Life Assurance Company of Boston moves to dismiss the complaint for failure to state a claim. Plaintiff Mia Pepp-Zotter failed to exhaust her administrative remedies. The motion to dismiss is therefore **GRANTED**.

## STATEMENT

Plaintiff Mia Pepp-Zotter began work for the University of California as a hospital laboratory technician at the San Francisco Medical Center on or about February 17, 2004. She enrolled in the university's Supplemental Disability Insurance Plan, paid all premiums that came due and otherwise did everything required to remain enrolled and eligible for benefits if she should become disabled (Compl. ¶¶ 5–6). For purposes of the instant motion, all plaintiff's well-pled allegations must be treated as true.

The policy provided that if an accident rendered her unable to perform her duties as a technician, defendant would pay her, after twelve months of receiving benefits, the lesser of (i) 50 percent of her base salary, including shift differentials, (ii) 70 percent of that pay less amounts received for other work or from other government, retirement or insurance benefits or (iii) $10,000 per month. The policy provided that, if the insurer terminated benefits, the worker could appeal that decision:

> You, the claimant, or your authorized representative, may appeal a denied claim within 60 days after you receive Liberty's notice of denial [of benefits]. You have the right to:
>
> 1. submit a request for review, in writing, to Liberty;
> 2. review pertinent documents; and
> 3. submit issues and comments in writing to Liberty.
>
> Liberty will make a full and fair review of the claim . . . . A final decision on the review shall be made not later than 60 days following receipt of the written request for review. [That period could be doubled under certain circumstances.] The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference . . . to those policy provisions upon which the final decision is based

(Compl. ¶ 7; Curry Decl., Exh. A (Supplemental Disability Insurance Plan ("Plan") 12, 26–27, 46, 50–51)).

Plaintiff later was injured. She was placed on disability leave just before completing her second month of work for the university. Defendant paid disability-insurance benefits from May 12, 2004, through July 15, 2005. On the latter date, defendant terminated her benefits. On or about August 3, 2005, the university "medically separated" plaintiff because she was unable to return to work (Compl. ¶¶ 8–10).

Without appealing defendant's decision to terminate her benefits, plaintiff filed a complaint in California state court alleging that defendant breached a contract, breached the attendant covenant of good faith and fair dealing, and violated the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, by failing to pay benefits to her under the disability insurance plan (Compl. ¶¶ 18, 21, 32). The case was removed to federal court pursuant to the parties' diversity

of citizenship (Pet. For Removal ¶ 3). *See* 28 U.S.C. 1441(b). This action is not covered by the Employee Retirement Insurance Security Act.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Defendant argues that the complaint must be dismissed because plaintiff did not use the internal appeal procedure provided by the university and administered by defendant (Br. 1). The California Constitution gives the University of California "full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments . . . and such competitive bidding procedures as may be made applicable to the university by statute . . . ." Cal. Const. Art. 9, § 9. These powers may give university policies "established by the Regents as matters of internal regulation . . . a status equivalent to that of state statutes." When the policies have such status and provide an administrative remedy, "relief must be sought from the administrative body and this remedy exhausted before the courts will act." The exhaustion rule "has important benefits: (1) it serves the salutary function of mitigating damages; (2) it recognizes the quasi-judicial tribunal's expertise; and (3) it promotes judicial economy by unearthing the relevant evidence and by providing a record should there be a review of the case." *Campbell v. Regents of Univ. of Cal.*, 35 Cal. 4th 311, 320–22 (2005).

In *Campbell*, the California Supreme Court held that a former employee of the University of California, San Francisco could pursue a civil action alleging retaliatory termination for whistleblower activities only if she had exhausted university grievance procedures. Those procedures were set forth in internal regulations providing that "[a]ny UC employee . . . may file a written complaint against a University employee alleging threatened or

3

1  actual interference or retaliation resulting from the reporting of improper activities." *Id.* at
2  317–18, 321.

3  Defendant contends that the appeals process set forth in the disability-insurance plan
4  should be treated the same as the procedures in *Campbell*, and that plaintiff was required to use
5  that process before she could bring the instant action (Br. 6). There are differences between the
6  appeal provision at issue in the instant action and the policy at issue in *Campbell*. The policy in
7  *Campbell* apparently involved a procedure conducted exclusively and directly by the university.
8  35 Cal. 4th at 318. In the instant case, a private company, Liberty Life Assurance, provided the
9  actual insurance policy in a contract with the University of California, and adjudicated appeals
10 itself (Plan 46–47).

11 There are, however, more similarities than differences between *Campbell* and the
12 provisions at issue here. The insurance plan ultimately was controlled and administered by the
13 university, subject to university group-insurance regulations and its contract with Liberty. The
14 university reserved the right to terminate the plan or amend it "at any time" (*id.* 47-48). The
15 policies and procedures in *Campbell* also were controlled by the university. 35 Cal. 4th at 318.
16 The adjudicative provisions in both policies are framed in permissive terms. In the instant case,
17 the claimant "*may* appeal" (Plan 46) (emphasis added). In *Campbell*, "[a]ny UC employee
18 . . . *may* file a written complaint . . . ." 35 Cal. 4th at 318. Both procedures are applicable to
19 employment-related issues at the same university campus. *See id.* (policy was for UCSF) (see
20 also Compl. ¶ 5) (plaintiff worked at UCSF). Both policies were governed by university
21 regulations (see Plan 1, 48–49).

22 The purposes of *Campbell*'*s* exhaustion rule would be well-served by its application to
23 the instant action. Use of the internal appeal procedure would give Liberty a better opportunity
24 to correct any mistake it made before expensive and time-consuming litigation. The
25 requirement would recognize that Liberty has particular expertise in construing plaintiff's
26 entitlement to benefits and would promote "judicial economy by unearthing the relevant
27 evidence and by providing a record . . . ," *Campbell*, 35 Cal. 4th at 322 (see Plan 43 ("Liberty
28 shall possess the authority, in its sole discretion, to construe the terms of this plan and to

4

determine benefit eligibility thereunder. Liberty's decisions regarding . . . benefit eligibility shall be conclusive and binding.")).

Given the similarities between the instant action and *Campbell*, plaintiff was required to exhaust the appeals process before bringing suit. She did not do so. This action must therefore be dismissed. All three of her claims could have been addressed in the appeals procedure. All counts therefore must be dismissed. Exhaustion, however, is not an absolute requirement. For example, it can be dispensed with when such an attempt would be futile. *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980).

Plaintiff claims that the exhaustion doctrine does not apply to this action because defendant is not a governmental entity, because it "has never been vested with quasi-judicial authority to resolve the claims that [she] has presented," and because two of her claims are non-statutory (Opp. 2–3). It is true that defendant is not a government agency. It was, however, acting as an agent for a plan administered by the University of California, *i.e.*, by a governmental agency. The plan rules were established by the university, subject to a contract with Liberty. The mere fact that a private rather than governmental entity is being sued does not eviscerate the exhaustion requirement. Plaintiff cites no authority in support of such a rule. Her citation to *Lopez v. Civil Service Commission*, 283 Cal. Rptr. 447, 451 (Cal. Ct. App. 1991), does not support such a rule. *Lopez* held that the exhaustion requirement was applicable when an administrative procedure was required by a *regulation*, not only when it was prescribed by *statute*. *Ibid.* Furthermore, the exhaustion requirement is applicable even to lawsuits against private organizations that have internal-claims procedures. *See Westlake Cmty. Hosp. v. Super. Ct. of L.A. County*, 17 Cal. 3d. 465, 474 (1976) ("From the earliest decisions reviewing actions of voluntary private associations, in which judicial review typically focused on the actions of fraternal or benevolent societies, our courts have recognized the applicability of the exhaustion of remedies doctrine in this context.") (citing Supreme Court decisions from 1895 and 1897).

Plaintiff claims that defendant was "never . . . vested with quasi-judicial authority to resolve the claims" that she presents, *i.e.*, breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Unfair Competition Act. That is true. However,

5

most decision-makers in internal appeals and claims procedures are not empowered to hear common-law or statutory claims. Instead, they hear administrative claims that are precursors to more traditional remedies. For example, the internal adjudicator in *Campbell* was empowered to hear grievances under the appeals procedure, not the plaintiff's statuary claim for retaliatory termination in violation of Government Code Section 12653, which could only be adjudicated in superior court. 35 Cal. 4th at 319; Cal. Gov't Code §12653(c). The inability of the internal adjudicator to hear the claims asserted in the complaint was not enough to eliminate the exhaustion requirement in *Campbell*. Neither is it here.

The fact that two of the plaintiff's claims are non-statutory also does not save her from the exhaustion requirement. In support of this proposition, she cites a decision holding that a plaintiff need not exhaust administrative remedies under the Fair Employment and Housing Act before bringing non-statutory employment claims. *Rojo v. Kliger*, 52 Cal. 3d 65, 88 (1990). That decision does not control here. *Rojo* focused on whether to extend the statutory and regulatory scheme provided by FEHA to common-law employment claims. Here, no such issue is presented. Instead, the issue is whether an insurance beneficiary can skip an administrative procedure set up to deal with just the type of grievance she has. Plaintiff's citation to *Lance Camper Manufacturing Corp. v. Republic Indemnity Company of America*, 51 Cal.Rptr.2d 622 (Cal. Ct. App. 1996), also does not support the proposition that a plaintiff can escape the exhaustion requirement merely because he or she is pursing non-statutory claims. In *Lance Camper,* the court held that a company need not go before the state insurance commissioner before pursuing common-law remedies for breach of contract against its insurer. The court came to that conclusion because the insurance commissioner had no authority or process to adjudicate such disputes. *Id.* at 626. Here, by contrast, defendant has authority under the plan to adjudicate such disputes and has a process for doing so (Plan 46).

Plaintiff also claims that she should not have to exhaust internal appeals because the plan does not require an internal appeal and nowhere sets forth the exhaustion requirement. In the absence of the exhaustion doctrine, that interpretation might be correct. But the exhaustion doctrine trumps this argument.

6

**CONCLUSION**

For the reasons stated, the motion to dismiss is **GRANTED WITHOUT PREJUDICE** to plaintiff. Defendant has represented that it will not contend that plaintiff's time to appeal the denial of her claim has expired, and that defendant will consider plaintiff's appeal on the merits. If that representation is not honored, plaintiff will be allowed to file a new action.

**IT IS SO ORDERED.**

Dated: September 5, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE